# NO. 12-20-00142-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *U.S. BANK NATIONAL ASSOCIATION, IN ITS CAPACITIES AS INDENTURE TRUSTEE AND COLLATERAL TRUSTEE, APPELLANTS/CROSS-APPELLEES, APPELLANTS* | § | *APPEAL FROM THE 217TH* |
| *V.* | | |
| *H & H PIPE & STEEL AND MADDUX BUILDING MATERIALS, INC., JOE LANE D/B/A HALLSVILLE WOODYARD, GOOD TIMES WOOD PRODUCTS, INC., TERRY DIFFEY D/B/A CHARTER TRUCKING, W.D. TOWNLEY AND SON LUMBER COMPANY, INC., D/B/A TOWNLEY LUMBER, WANNER ENTERPRISES, INC., D/B/A EWELL EQUIPMENT CO., DP SOLUTIONS, INC., AND PRIME ACRES MANAGEMENT, INC., APPELLEES/CROSS-APPELLANTS, APPELLEES* | § § | *JUDICIAL DISTRICT COURT* *ANGELINA COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

In this permissive appeal, U.S. Bank National Association (U.S. Bank) appeals the denial of its motion for summary judgment and presents three issues. H&H Pipe & Steel, Maddux Building Materials, Inc., Joe Lane d/b/a Hallsville Woodyard, Good Times Wood Products, Inc., Terry Diffey d/b/a Charter Trucking, W. D. Townley & Son Lumber Co., Inc. d/b/a Townley Lumber, Wanner Enterprises Inc. d/b/a Ewell Equipment Co., DP Solutions, Inc., Prime Acres Management, Inc. (collectively, Counter-Appellants) also appeal the denial of their motions for summary judgment and present one issue. We affirm in part and reverse and remand in part.

1

U.S. Bank is the trustee for holders in more than $50,000,000 in bonds issued by the Angelina and Neches River Authority Industrial Development Corporation (the Authority) in 2007 for the construction of a power plant in Lufkin, Texas. The Authority assigned its security interests to the trustee, U.S. Bank. The bond proceeds were loaned to Aspen Power, the owner of the power plant. Construction of the plant began in 2007 and was completed in 2012. However, the power plant was generally a commercial failure, and Aspen Power abandoned the plant to U.S. Bank as collateral trustee.

This suit arose when the Angelina County taxing authority brought two separate actions in 2012 to collect ad valorem taxes due by Aspen Power and Angelina Fuels. Angelina Fuels is a separate entity that processed wood waste used as fuel for the power plant. Counter-Appellants provided goods or services in connection with construction of the power plant or processing of wood waste used at the plant and intervened in the tax lien suit. U.S. Bank resolved the tax claims by advancing funds to pay the ad valorem taxes due. In 2016, the trial court granted U.S. Bank's partial summary judgment and allowed U.S. Bank to foreclose the deeds of trust and tax liens on the properties securing the debt. The trial court further ordered the proceeds of the sale be placed in the registry of the court. The parties agreed that the only remaining issue was that of lien priority following the foreclosure sale.

Aspen Power also owed more than $8.5 million in mechanic's liens and judgment liens when it abandoned the power plant. U.S. Bank resolved the majority of the lien claims against the sale proceeds. Counter-Appellants are the remaining lien claimants. H&H Pipe and Maddux Building Materials hold mechanic's and materialman's liens (the M&M liens). The remainder of Counter-Appellants hold various judgment liens against Aspen Power. All of the Counter-Appellants assert priority over the rights, liens, and interests assigned to U.S. Bank as security for repayment of the bonds.

Throughout the pendency of the lawsuit, both U.S. Bank and Counter-Appellants filed motions for traditional summary judgment alleging that no issues of material fact remained. Essentially, U.S. Bank urged that its right to the sale proceeds is first in priority to the remaining liens. And Counter-Appellants argued that their respective liens should be prioritized under the terms of the deed of trust. The trial court denied the motions for summary judgment and

2

determined that the loan documents are ambiguous but permitted the parties to appeal five issues.[1]

<u>STANDARD OF REVIEW</u>

Unless a statute specifically authorizes an interlocutory appeal, appellate courts have jurisdiction only over final judgments. *Cherokee Water Co. v. Ross*, 698 S.W.2d 363, 365 (Tex. 1985). Generally, a party may not appeal from a trial court's denial of a motion for summary judgment or grant of a partial summary judgment because such rulings do not constitute a final judgment. *Frias v. Atl. Richfield Co.*, 999 S.W.2d 97, 101 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). Section 51.014 of the Texas Civil Practice and Remedies Code designates civil orders that may be appealed on an interlocutory basis, and it is strictly construed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014 (West Supp. 2020); *Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 355 (Tex. 2001). Section 51.014(d) permits an interlocutory appeal of an otherwise unappealable order, including the denial of a summary judgment motion, upon the trial court's certification of the statutory requirements, that is, the order involves a controlling question of law on which there is substantial ground for disagreement and an immediate appeal may materially advance the ultimate resolution of the case. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d). A court of appeals has discretion to accept or refuse to hear a permissive appeal. *Id.* § 51.014(f). This Court previously entered an order accepting the permissive appeal, and we have jurisdiction over this appeal pursuant to Texas Civil Practice and Remedies Code Sections 51.014(d) and 51.014(f). The scope of the permissive appeal is limited to consideration of the controlling issues identified in the trial court's order. *See Tex. Windstorm Ins. Ass'n v. Jones*, 512 S.W.3d 545, 552 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (citing *CMH Homes v. Perez*, 340 S.W.3d 444, 447 (Tex. 2011)).

We review a summary judgment de novo. *See HCBeck, Ltd. v. Rice*, 284 S.W.3d 349, 352 (Tex. 2009) (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)); *Mid-Century Ins. Co. of Tex. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007). When we review a traditional summary judgment, we determine whether the defendant conclusively disproved an element of the plaintiff's claim or conclusively proved every element of an affirmative defense.

---

[1] Counter-Appellants abandoned the interlocutory appeal of their motion for summary judgment regarding the lack of consideration for the Angelina Fuels deed of trust. As a result, we only address four issues.

*Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997); *Smith v. Deneve*, 285 S.W.3d 904, 909 (Tex. App.—Dallas 2009, no pet.); *see also* TEX. R. CIV. P. 166a(c). We take evidence favorable to the nonmovant in a motion for summary judgment as true, and we indulge every reasonable inference and resolve every doubt in favor of the nonmovant. *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 800 (Tex. 1994). The trial court may consider all competent evidence on file at the time of the summary judgment hearing. *See* TEX. R. CIV. P. 166a; *Lance v. Robinson*, 543 S.W.3d 723, 732 (Tex. 2018) (explaining that a trial court does not err by relying on summary judgment evidence on file prior to the summary judgment hearing even though filed prior to the instant summary judgment record).

<u>AMBIGUITY</u>

In its second issue, U.S. Bank urges the trial court erred in finding the loan documents ambiguous. Counter-Appellants agree that the loan documents are not ambiguous; however, the parties disagree on what the documents mean.

## Applicable Law

In construing the meaning of a deed, our primary duty is to ascertain the intent of the parties as provided in the four corners of the document. *Luckel v. White,* 819 S.W.2d 459, 461 (Tex. 1991). To do this, we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the agreement, even if different parts of the deed appear inconsistent or contradictory. *Id.* at 462; *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983). We must assume the parties to the instrument intended every clause to have some effect; therefore, the language of the deed should be interpreted so that no provision is rendered meaningless. *See Luckel,* 819 S.W.2d at 461; *Coker,* 650 S.W.2d at 393. Each word and phrase should be given its plain, grammatical meaning unless doing so would clearly defeat the parties' intent. *Moon Royalty LLC v. Boldrick Partners,* 244 S.W.3d 391, 394 (Tex. App.—Eastland 2007, no pet.). No provision of the deed should be struck unless an irreconcilable conflict exists which causes one part of the deed to destroy another part. *Id.*

A deed may be either ambiguous or unambiguous, and this determination is a question of law. *Friendswood Dev. Co. v. McDade & Co.,* 926 S.W.2d 280, 282 (Tex. 1996). To make this determination, the trial court must examine the deed as a whole in light of the circumstances present at the time of its execution. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,*

940 S.W.2d 587, 589 (Tex. 1996); *Derwen Res., LLC v. Carrizo Oil & Gas, Inc.,* No. 09–07–00597–CV, 2008 WL 6141597, at *4 (Tex. App.—Beaumont May 21, 2009, pet. denied) (mem. op.); *Savage v. Doyle,* 153 S.W.3d 231, 234 (Tex. App.—Beaumont 2004, no pet.). If after applying the pertinent rules of construction, a deed is subject to two or more reasonable interpretations, then the deed is ambiguous, and a fact issue exists as to the parties' intent. *Columbia Gas Transmission Corp.,* 940 S.W.2d at 589; *Derwen Res.,* 2008 WL 6141597, at *4. However, an ambiguity does not arise merely because the parties advance conflicting interpretations of the deed's language; instead, for an ambiguity to exist, both interpretations must be reasonable. *Id.*

A deed is unambiguous when it is so worded that it can be given "a certain or definite legal meaning or interpretation." *Coker,* 650 S.W.2d at 393. The interpretation of an unambiguous deed is a question of law, and we conduct a de novo review of the trial court's construction. *Altman v. Blake,* 712 S.W.2d 117, 118 (Tex. 1986); *Range Res. Corp. v. Bradshaw,* 266 S.W.3d 490, 493 (Tex. App.—Fort Worth 2008, pet. denied). When conducting a de novo review, we exercise our own judgment and redetermine each issue affording no deference to the trial court's decision. *Quick v. City of Austin,* 7 S.W.3d 109, 116 (Tex. 1998); *Range Res. Corp.*, 266 S.W.3d at 493.

## Analysis

U.S. Bank and Counter-Appellants all urge that the loan documents are unambiguous. However, they disagree as to what the loan documents actually mean. At issue is the following provision in the deeds of trust:

> 2.1 <u>Grant</u>. To secure the full and timely payment, performance, and discharge of the Secured Covenants, Grantor has GRANTED, BARGAINED, SOLD, and CONVEYED, and by these presents does GRANT, BARGAIN, SELL and CONVEY, unto Trustee, in Trust, the Mortgaged Property, subject, however, to the Permitted Liens . . .

U.S. Bank urges that the evidence establishes that it has a first-filed deed of trust, which takes priority over all other liens created afterwards. It further argues that if Counter-Appellants' liens are "permitted liens" under the loan documents, the liens do not take priority over the deed of

trust.[2]  Counter-Appellants posit that the granting clause makes the deed of trust secondary to any "permitted liens" as defined in the loan documents.  We agree with Counter-Appellants.

The terms of a deed of trust are strictly construed. As such, the terms and conditions create and measure the rights of the parties; and we may neither add to nor take from what is provided.  *Murchison v. Freeman*, 127 S.W.2d 369, 372 (Tex. Civ. App.—El Paso 1939, writ ref'd).  With respect to a conveyance of an interest in real property, the term "subject to" is a term of qualification, meaning "subordinate to," "subservient to," or "limited by." *Kokernot v. Caldwell,* 231 S.W.2d 528, 531 (Tex. Civ. App.—Dallas 1950, writ ref'd); *EOG Res., Inc. v. Hanson Prod. Co.,* 94 S.W.3d 697, 702 n.2 (Tex. App.—San Antonio 2002, no pet.); *Bradshaw v. Lower Colo. River Auth.,* 573 S.W.2d 880, 883 (Tex. Civ. App.—Beaumont 1978, no writ).  Because "subject to" language implies a limitation, it should not be interpreted to give a grantee rights in addition to an already stated scope of conveyance. *Smith v. Huston*, 251 S.W.3d 808, 823 (Tex. App.—Fort Worth 2008, pet. denied).  Rather, when property is granted "subject to" certain conditions—including conditions requiring performance by the grantee— it is burdened by those conditions. *See Rutten v. Cazey,* 734 S.W.2d 752, 755 (Tex. App.—Waco 1987, writ denied) (holding that easement grantee was required to build and maintain fence over easement when easement grant was expressly made subject to affirmative obligation of grantee to build and maintain fence); *see also Kuo v. Greenview Townhomes Ass'n, Inc.,* No. B14–88–00066–CV, 1989 WL 6925, at *1–2 (Tex. App.—Houston [14th Dist.] Feb. 2, 1989, no writ) (not designated for publication) (holding, in accordance with cases construing "subject to" language as language of limitation, that grantee of deed made subject to "maintenance charges not now due and the leans [sic] securing said charges" was personally liable for payment of such maintenance charges).

Each deed of trust explicitly states that the security interest is being granted subject to permitted liens.  We must give contract language its plain, grammatical meaning unless it would clearly defeat the parties' intentions. *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 479 (Tex. 2019).  As such, under the express terms of the deed of trust, the security interest granted to U.S. Bank is "subservient to" any permitted liens.  This interpretation does not

---

[2] At oral argument, U.S. Bank argued for the first time on appeal that the "permitted lien" language meant that any permitted lien in existence at the time of the execution of the loan documents would take priority and that any permitted lien executed afterwards would not be given priority.  However, U.S. Bank has cited no authority for this position and did not make this argument in its brief.  As such, we do not consider it.

defeat the parties' intentions because the "subject to permitted liens" language also appears later when defining lien status:

> 4.4. <u>First Lien Status</u>. Grantor will protect the first lien and security interest status of the Deed of Trust and the other Security Documents subject to Permitted Liens.

As a result, we conclude that the granting language can be construed with only one certain and definite interpretation: that "permitted liens" take priority over the deed of trust. Having determined that the trial court erred by finding the loan documents ambiguous, we sustain U.S. Bank's second issue.

## PERMITTED LIENS

In its first issue, U.S. Bank argues that its deed of trust has priority over the M&M liens and judgment liens. Counter-Appellants argue that their respective liens are "permitted liens" under the terms of the loan documents and therefore have priority over U.S. Bank's security interest.

The deeds of trust define "permitted liens" as having "the definitions ascribed thereto in the Master Agreement." The Master Agreement defines "permitted liens," in pertinent part, as follows:

> (5) Liens imposed by law, such as carriers', warehousemen's, landlord's and mechanic's Liens, in each case, incurred in the ordinary course of business;
>
> . . .
>
> (11) Liens incurred in the ordinary course of business of the Company of the Company [sic] securing obligations that in the aggregate at any one time outstanding do not exceed the Asset Percentage;

Counter-Appellants urge that each of their liens qualify as "permitted liens" under the Master Agreement. We address the M&M liens and the judgment liens in turn.

### M&M Liens

H&H Pipe and Maddux each filed a mechanic and materialman's lien. H&H Pipe filed its lien in August 2012, and Maddux filed in October 2011. Each company furnished material

7

for the construction of the power plant: H&H provided steel and Maddux furnished lumber. None of the parties dispute that H&H and Maddux possess valid and enforceable M&M liens. U.S. Bank simply claims that the M&M liens do not take priority over the deeds of trust security interests and, in the alternative, the M&M liens do not qualify as "permitted liens" under the Master Agreement.

The definition of "permitted liens" in the Master Agreement specifically includes mechanic's liens. As a general rule, M&M liens whose inception is subsequent to a deed-of-trust lien will be subordinate to the deed-of-trust lien. ***Sanchez v. Schroeck,*** 406 S.W.3d 307, 311 (Tex. App.—San Antonio 2013, no pet.) However, priority can be controlled by contract between the parties. *See* ***Hargrove v. Cornett Estate***, 292 S.W.2d 666, 667-68 (Tex. Civ. App.—San Antonio 1956, writ ref'd n.r.e.); *see generally* ***Cont'l Radio Co. v. Cont'l Bank & Trust Co.***, 369 S.W.2d 359 (Tex. Civ. App.—Houston 1963, writ ref'd n.r.e.). And, as discussed above, the parties gave priority to "permitted liens." Because M&M liens are specifically listed as "permitted liens" under the definitions, the liens held by H&H Pipe and Maddux take priority over the deed of trust security interests.[3] We overrule this portion of U.S. Bank's first issue.

**Judgment Liens**

The remainder of Counter-Appellants have valid, abstracted judgment liens. Each lien arose due to the nonpayment of debts incurred by both Aspen and Angelina Fuels. Wanner Enterprises provided maintenance service work for Angelina Fuels' equipment. DP Solutions provided computer equipment and related services. Joe Lane d/b/a Hallsville Woodyard, Terry Diffey d/b/a Charter Trucking, Good Times Wood Products, Inc., Townley and Son Lumber Company, Inc., and Prime Acres Management, Inc., each provided biomass to fire the generator boiler. Each of these judgment lien creditors alleges that their liens are "permitted liens" because they were incurred in the ordinary course of business and, as a result, should take priority over the deed of trust security interests. We disagree.

"Under Texas law, no lien is created by the mere rendition of a judgment." ***Citicorp Real Estate, Inc. v. Banque Arabe Internationale D'Investissement***, 747 S.W.2d 926, 929 (Tex. App.—Dallas 1988, writ denied). To create an enforceable judgment lien against real property owned by the judgment debtor, the judgment creditor must comply with the requirements of

---

[3] Because we hold that the M&M liens take priority per the terms of the loan documents, we need not address H&H Pipe and Maddux's argument that the M&M liens take priority under the "relation back doctrine."

Chapter 52 of the Texas Property Code. *Id.; see* TEX. PROP. CODE ANN. §§ 52.001 *et seq.* (West 2014). "The judgment creditor's first step in creating a judicial lien is to obtain an abstract of the judgment." *Citicorp Real Estate,* 747 S.W.2d at 929; *see* TEX. PROP. CODE ANN. § 52.002 (West 2014). The purpose of an abstract of judgment is to create a lien against the debtor's property and to provide notice to subsequent purchasers and encumbrancers of the existence of the judgment and the lien. *Olivares v. Nix Trust,* 126 S.W.3d 242, 247 (Tex. App.—San Antonio 2003, pet. denied). Therefore, by their express nature, judgment liens cannot be created in the "ordinary course of business" as required by the definition of "permitted liens" in the Master Agreement. *See Tuscarora Corp. v. HJS Indus., Inc.*, 794 S.W.2d 435, 440 (Tex. App.—Corpus Christi 1990, writ denied) (holding that a breach of contract claim was not entered into in the ordinary course of business). As a result, the judgment liens are not "permitted liens" and do not take priority over the deed of trust security interests. We sustain this portion of U.S. Bank's first issue.

## EQUITABLE DEFENSES

In its third issue, U.S. Bank urges that Counter-Appellants' equitable defenses were unsupported by sufficient evidence to create a fact issue precluding summary judgment. Counter-Appellants failed to respond to U.S. Bank's assertion.

Counter-Appellants' summary judgment responses, as recognized by the trial court, included "allegations of unclean hands and other equitable defenses relating to . . . the ITC grant." And the trial court rejected U.S. Bank's contention that the allegations fail to raise genuine issues of material fact to defeat U.S. Bank's summary judgment.

As demonstrated above, U.S. Bank showed that its security interests take priority over the judgment liens under the terms of the loan documents. When a party makes a traditional motion for summary judgment and proves each element of its case, the burden shifts to the opposing party to prove their defenses. *Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex. 1997). And mere allegations in a summary judgment motion or response are not competent summary judgment proof to create a genuine issue of material fact. *See Keenan v. Gibraltar Sav. Ass'n*, 754 S.W.2d 392, 393 (Tex. App.—Houston [14th Dist.] 1988, no writ). A party who opposes a summary judgment by asserting an affirmative defense must offer competent summary judgment proof to support its allegations. *Baxley v. PS Group, LLC*, No. 2-09-217-CV, 2010

WL 1137039, at *2 (Tex. App.—Fort Worth Mar. 25, 2010, no pet.) (mem. op.). Counter-Appellants failed to provide any such proof. As a result, the trial court erred in concluding Counter-Appellants' equitable defenses created genuine issues of material fact when it denied U.S. Bank's summary judgment. U.S. Bank's third issue is sustained.

## SUFFICIENCY OF PROPERTY DESCRIPTION

In their sole issue on appeal, Counter-Appellants contend the property description contained in the Angelina Fuels deed of trust is insufficient to convey an interest. U.S. Bank urges that this issue has already been resolved by the trial court and is now moot. We agree with U.S. Bank.

The trial court authorized foreclosure of the Angelina Fuels property in February 2016. When the judgment of this Court can have no effect on an existing controversy, a case becomes moot. *See F.D.I.C. v. Nueces Cty.,* 886 S.W.2d 766, 767 (Tex. 1994); *Restrepo v. First Nat'l Bank of Dona Ana Cty., N.M.,* 888 S.W.2d 606, 607 (Tex. App.—El Paso 1994, no writ). Because the property which was the subject of this appeal has been sold, any judgment issued by the Court would have no effect as there is no longer a controversy to resolve. *See F.D.I.C.,* 886 S.W.2d at 767. Therefore, we overrule Counter-Appellants' issue.

## DISPOSITION

We *sustain* issue two, determining that the loan documents are not ambiguous. We *overrule* U.S. Bank's first issue as to the M&M liens held by H&H Pipe and Maddux, but we *sustain* U.S. Bank's first issue with regard to the judgment liens held by the remainder of Counter-Appellants. We *sustain* U.S. Bank's third issue and *overrule* Counter-Appellants' sole issue. We *reverse* the denial of U.S. Bank's motion for summary judgment with regard to the judgment liens, *reverse* the denial of H&H Pipe's and Maddux's motions for summary judgment, and *affirm* the denial of the remainder of Counter-Appellants' motions for summary judgment. We *remand* this case to the trial court with instructions to distribute the foreclosure sale proceeds in accordance with this opinion.

JAMES T. WORTHEN
Chief Justice

Opinion delivered March 10, 2021.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MARCH 10, 2021**

**NO. 12-20-00142-CV**

**U.S. BANK NATIONAL ASSOCIATION, IN ITS CAPACITIES AS INDENTURE TRUSTEE AND COLLATERAL TRUSTEE, APPELLANT/CROSS-APPELLEE,**
Appellants
V.
**H & H PIPE & STEEL AND MADDUX BUILDING MATERIALS, INC., JOE LANE D/B/A HALLSVILLE WOODYARD, GOOD TIMES WOOD PRODUCTS, INC., TERRY DIFFEY D/B/A CHARTER TRUCKING, W.D. TOWNLEY AND SON LUMBER COMPANY, INC., D/B/A TOWNLEY LUMBER, WANNER ENTERPRISES, INC., D/B/A EWELL EQUIPMENT CO., DP SOLUTIONS, INC., AND PRIME ACRES MANAGEMENT, INC., APPELLEES/CROSS-APPELLANTS,**
Appellees

Appeal from the 217th District Court
of Angelina County, Texas (Tr.Ct.No. TX-0186)

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, because it is the opinion of this Court that there was error in judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this Court that:

- the denial of U.S. Bank's motion for summary judgment with regard to the judgment liens be **reversed**;

11

- the denial of H&H Pipe's and Maddux's motions for summary judgment be **reversed**;
- the denial of the remainder of Counter-Appellants' motions for summary judgment be **affirmed**;
- the cause be **remanded** to the trial court with instructions to distribute the foreclosure sale proceeds in accordance with the opinion of this Court;
- all costs of court are assessed against **JOE LANE D/B/A HALLSVILLE WOODYARD, GOOD TIMES WOOD PRODUCTS, INC., TERRY DIFFEY D/B/A CHARTER TRUCKING, W.D. TOWNLEY AND SON LUMBER COMPANY, INC., D/B/A TOWNLEY LUMBER, WANNER ENTERPRISES, INC., D/B/A EWELL EQUIPMENT CO., DP SOLUTIONS, INC., AND PRIME ACRES MANAGEMENT, INC.,** as nonprevailing parties under Texas Rule of Appellate Procedure 43.4;
- and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*